# COURT OF ERRORS AND APPEALS.

THOMAS McCOY *et al.*, Defendants below, Plaintiffs in error, *vs.* THE STATE OF DELAWARE, *ex relatione*, JAMES F. ALLEE *et al.*, Plaintiffs below, Defendants in error.

WRIT OF ERROR TO THE SUPERIOR COURT FOR KENT COUNTY.

**Mandamus. Election. Board of Canvass.**—Elections were held in fourteen out of sixteen election districts of the county, and certificates of the result thereof, duly signed by the election judges, were delivered to the Board of Canvass, and in one of the other two districts an election was held, but no certificate signed or returned, while no election was held in the other of said two districts; the inspectors, with the Sheriff, met and organized as a Board of Canvass at the time and place prescribed by law ; the ten Democratic members of the Board calculated the votes of only eight of the fourteen districts; for which returns had been made, and refused to calculate the vote of the remaining six districts, whereby the vote of the county was ascertained to be about 3948, or about 2962 less than the total vote returned, and by this means pluralities were ascertained for the Democratic candidates for the offices to be filled by the election, and certificates of the result were signed by the said ten inspectors ; the six Republican inspectors, with the Sheriff as presiding officer, calculated the votes of all the said fourteen districts, for which certificates had been returned, and thereby ascertained the total vote so returned, by which there were pluralities in favor of the Republican candidates, and of this result certificates were made and signed by the said six inspectors and the Sheriff : *Held*, that a peremptory mandamus should not issue, upon petition of the candidates declared by the last mentioned certificates to have been elected, to compel the inspectors of the county to assemble at the court house of the county at a time named by the Court, and publicly perform their duty as a Board of Canvass, by ascertaining the state of the election, by calculating the aggregate amount of all the votes given in all the election districts of the county. *Held, further*, that a prerequisite to the issuing of a mandamus for that purpose was that the election judges of the hundred in which an election was held, but of

which no certificate was returned, should first be required, by mandamus or otherwise, to make and return such certificate.

**Election. Board of Canvass.**—There is nothing in the law to prevent a Board of Canvass from adjourning or separating before it has calculated the aggregate amount of all the votes given in all the hundreds of the County.

**Same. Ministerial Duty. Judicial Power.**—The powers of the Board of Canvass of a county are ministerial and not discretionary or judicial in their character.

**Same.**—The Boards of Canvass are not empowered and have no lawful authority to inquire into the validity of any election in any hundred or election district ; nor into the irregularity or misconduct attending any election therein ; nor to throw out, or refuse or fail to count all and every vote or votes appearing to have been given therein, upon the face of the said certificates of election duly made and delivered and produced before said Board, according to law.

**Same.**—It is the plain and imperative duty of the Board of Canvass to promptly discharge the task of ascertaining the state of the election throughout the county, as aforesaid, and from the evidence furnished exclusively by said certificates, and when it comes to their knowledge that the inspectors and judges of any hundred or election district have refused or failed to make and sign the certificates of the votes actually given therein at any election, to take such proceedings, without undue delay, as shall be appropriate for procuring such certificates, and thus enabling such Board to complete their task of ascertaining the state of the election throughout the county as aforesaid.

**Same.**—Until the said Board of Canvass " has calculated the aggregate amount of all the votes for each office which shall have been given in all the hundreds and election districts of the county for every person voted for for such office," and signed and delivered the prescribed certificate, it cannot be deemed in legal contemplation to have fulfilled the purpose of its creation, exhausted its powers and become *functus officio*.

**Mandamus.**—Madamus, according to the uniform current of our well considered adjudications, is in this State a prerogative writ in the supervisory sense,

issuable exclusively by the Superior Court, not of course, but only in the exercise of a sound judicial discretion.

Same.—Mandamus is an extraordinary remedy, and if the right is doubtful or the duty discretionary it will not generally be allowed.

Same.—In this State the common law prevails that the return to the alternative writ of mandamus is conclusive and to be taken as true for the purposes of the case, until proven false in an action for a false return.

Same.—It is generally competent for the respondent to set forth in his return to an alternative mandamus several distinct and separate defences at his option, and if he prevails in either of them the peremptory writ will be refused. But if they be inconsistent or repugnant, the Court will quash the entire return; yet it is within the discretion of the Court to quash such portion of the return as it may deem insufficient, and to allow the rest to remain.

Same.—The return to the alternative writ must set forth either a positive denial of the truth of the allegations therein contained, or state other facts sufficient in law to defeat the relator's right. And in general the return should contain positive allegations of fact, and not state mere inferences from fact. An argumentative return, like any other argumentative pleading, is bad. And a return, as well as the writ, is faulty which states mere conclusions of law, without stating the facts so that the Court may judge of their sufficiency.

Same.—Mandamus is employed only to compel the performance of an act in accordance with and not contrary to the law. It can neither diminish nor increase the duty as fully prescribed by law. Its function is not to create a duty, but to coerce the performance of a pre-existing duty.

Same.—A peremptory mandamus is an absolute command to perform the particular act which it seeks to coerce, and only a return of obedience to the writ and of what has been done in its execution will be allowed; and therefore this writ will not be granted unless the act or duty whose enforcement is sought is legally possible at the time.

This was a writ of error to the Superior Court for Kent County for the hearing of which a Special Term of this Court was

called for December 28, 1896, in accordance with this provisions of Chapter 775, Vol. 19, Del. Laws. The facts and pleadings are fully stated in the report of the trial in the Superior Court, *supra.*

The case was heard before NICHOLSON, CH. and GRUBB and MARVEL, JJ.

*Ward,* for the defendants in error, moved to dismiss the writ of error upon the ground that it did not conform to Section 6 of Rule 21, of this Court, which provides that all appeals, writs of error and citatations must be made returnable not exceeding 30 days from the day of issuing the citation, whether the return day falls in vacation or in term time.

An inspection of the writ shows that it was issued December 3, 1896, and was returnable on the third Tuesday of January following, and that the rule was therefore not complied with.

*Wolcott,* for the plaintiffs in error, contended that the rule relied upon was null and void, first, because the statute provides that " every writ issued for the commencement of an action shall bear date on the day on which it was issued, and shall be returnable on the first day of the term next thereafter." He contended that the taking of the writ of error was within the language " commencement of an action."

In the second place, he contended that the fact that the Legislature conferred upon all the other Courts express power to make rules, and did not confer that power upon the Court of Errors and Appeals was an implied denial of the right of that Court to exercise such power.

In support of the position that the writ of error was an original action, he cited 2 Tidd, Pr. 1134; Freeman, Judg. § 205; *Allen et al. vs. Mayor etc. of Savannah,* 9 Ga. 292; *Ulshaffer vs. Stewart,* 71 Pa. 172; *National Bank vs. Jenkins et al.,* 104 Ill. 146; *Roberts et at. vs. Fahs,* 32 *id.* 474; *Ripley vs. Morris,* 2 Gilm. 381; *Greenway vs. Dare,* 6 N. J. L. 371. It cannot be urged that man-

Del. J    McCoy *et al.* vs. STATE, *ex rel.*, ALLEE *et al.*    547

Motion to Dismiss.

damus is a special proceeding, and therefore that these principles do not apply, because it has been settled in this State as elsewhere, that mandamus in modern practice is nothing more than an action at common law between two parties. *Knight et al. vs. Ferris,* 6 Houst. 313 ; *State vs. New Haven Co.,* 11 Conn. 134.

*Ward,* for the defendants in error, contended that the rule having been adopted, it was not only the duty of suitors to conform to it, but the respondents had a right to depend upon it and to take advantage of it. The adoption of the rule was a judicial decision, by the highest authority in the State, of the right of the Court to adopt it.

He further contended that the statutory provision relied upon did not apply or have any reference to the Court of Errors and Appeals, and that this was apparent from the context and from the titles of the Chapters of the subdivision of the Revised Code in which this statute was contained. The section cited to uses the words " commencement of an action " solely with reference to proceedings in Courts having original jurisdiction and not to a Court having only appellate jurisdiction. The very language of the writ of error thus negatives the contention that it is the commencement of an action.

In the course of the argument a suggestion having been made and assented to on both sides, that it was entirely within the power of the Court to amend the writ so as to make it returnable on the day of the session, NICHOLSON, CH. inquired whether counsel on either side desired to be heard upon the question of the right to amend. Counsel on both sides agreed that there was no doubt upon the point.

NICHOLSON, CH. The Court, being of the opinion that whichever view should be taken of the validity of this rule, we would still have the power to amend the writ as to the date of its return, do not deem it necessary to pass upon that question. We therefore

direct that the writ be amended to such date as, in the language of the statute, the interests of justice will require.   As to the date, we understand that counsel wish to be heard.

After some discussion the order of the Court was that the writ be amended so as to make it returnable on the first day of the Special Term.   And it was further ordered that the assignment of errors be filed by to-morrow morning at 10.30 A. M.

On December 29th the Court reassembled and the record of the Court below as prepared· by counsel of the defendents in error was, by agreement, filed as the record.

The assignments of error were then filed.  They were seventeen in number and included in varying forms of statement, objections, the substance of which may be thus briefly stated :

A general objection to the whole record not setting out separately and particularly any error.   Also, that the case made by the petition was not sufficiently clear and free from doubt to warrant the writ.  A similar general objection to the pleadings, practice and procedure, without specification.

That the writ should not have been awarded because it was impossible to obey it.

That the Court below erroneously permitted amendments.

That the averments in the petition and alternative writ as to the delivery of ballot boxes and the execution, delivery and deposit of election certificates were insufficient.

That the inspectors were not duly and legally constituted such.

That they were *functi officio* as members of the Board of Canvass.

That the plaintiffs had another adequate legal remedy ; and that mandamus is not a proper remedy when the end sought to be accomplished is to establish *prima facie* title to an office.

That the peremptory writ was awarded without quashing the return.

The assignment of error which proved to be the one mainly considered was as follows:

9. That the Court below erred in awarding a peremptory writ of mandamus, because it appears by the petition and alternative writ of mandamus and also the return thereto, that votes were given in West Dover Hundred for every person voted for or named as voted for in said petition and alternative writ for the respective offices for which they were respectively candidates. It further appears by the said return that no certificates of the election in said Hundred were ever made and signed by the inspector and judges of election in said Hundred, and it further appears, also by the said petition and alternative writ, that they nor either of them contained any averment that such certificates of election for said West Dover Hundred were ever made or signed by the inspector and judges thereof.

The formal pleading to put the assignments in issue having been filed, the Court adjourned until December 31, at 10.30 A.M., on which day the session was resumed for the purpose of hearing the argument.

*John B. Penington, James L. Wolcott, Richard R. Kenney, James H. Hughes, John D. Hawkins* and *Henry Ridgely, Jr.,* for plaintiffs in error.

The right of the relators to the remedy by writ of mandamus in the cause below was not sufficiently clear and free from doubt to warrant the issuance of such writ. Merrill, Mandamus § 255; *Gruner vs. Moore,* 6 Colo. 526; *State, ex rel. Ferris vs. Buhler,* 90 Mo. 560.

A peremptory writ of mandamus should not have been awarded because it appears by the record that the plaintiffs in error could not obey or execute its command if issued, and therefore, if issued, it would prove nugatory, unavailing and futile. Alternative writ, p. 9. *State, ex rel. McGuire vs. Waterman,* 5 Nev. 323–328; *People, ex rel. Bailey vs. Supervisors of Green,* 12 Barb. 217; *Clark vs. Buchanan,* 2 Gilfillan, (Minn.) 298; *Bangor vs. County Commis-*

*sioners*, 67 Me. 294 ; *Bowen vs. Hickson*, 45 Mo. 340 ; *Akerman vs. Desha County*, 37 Ark. 457 ; *State vs. Grubb, Trustee*, 85 Ind. 213; *King vs. Pembrokshire*, 2 B. & Ald. 391 ; *Fuller vs. Brown*, 30 S. W. Rep. (Tex.) 506 ; *City of Boston Harbor vs. St Joseph, etc. Ry. Co.*, 60 N. W. Rep. (Mich.) 758 ; Shortt, Mandamus 346, Sec. 3 ; *Ex parte Mackey*, 15 S. C. 322 ; *People vs. Lieb*, 85 Ill. 434 ; *Hardee vs. Gibb*, 50 Miss. 302 ; *State Board of Education vs. West Point*, 50 Miss. 638 ; *Wibber et al. vs. Zimmerman*, 23 Md. 45 ; *State vs. Leahre*, 7 Rich. 234 ; *King vs. Exeter*, 2 East 466 ; Merrill, Mandamus Sec. 42 ; *Swann, Auditor &c. vs. Work*, 34 Miss. 439 ; *Clayton vs. McWilliams*. 49 Miss. 311 ; *Webster vs. Nowell*, 66 Mich. 503.

The material facts required to warrant a peremptory writ of mandamus were not set forth in the petition or alternative writ of mandamus distinctly, unreservedly, fully and clearly. Alternative writ, pp. 47, 38, Par. 10 ; Return p. 16. *People vs. Village of Crotty*, 93 Ill. 189, 199 ; *Houston, T. and B. R. Co. vs. Randolph*, 24 Texas 317, 333 ; Merrill, Mandamus § 255 ; *Laville vs. Soucy*, 96 Ill. 467.

The persons named as inspectors and respondents in the petition and alternative writ did not appear by the record to have been duly and regularly constituted inspectors. Rev. Code. (1874) pp. 111 and 112 ; 17 Del. Laws 53 ; 19 *id.* 158 ; Rev. Code (1893) 157 ; Alternative writ p. 7, Par. 4 ; Return p. 7.

The peremptory writ should not have been awarded because the plaintiff below had another adequate legal remedy. *Ex parte Mackey*, 15 S. C. 322.

The amendments joining as parties the Sheriff and the Board of Canvass, composed of the Inspectors, should not have been allowed. *Winslow vs. Merrill, et al.* 11 Me. 127 ; *Ayer vs. Gleason*, 60 Me. 207 ; *Noll vs. Swinford*, 6 Pa. 187 ; *Cove vs. Lawrenee*, 4 Fost. 128 ; *Knight vs. Ferris*, 6 Houst. 283, 313 ; *Pitkin vs. Roby*, 43 N. H. 138.

It does not appear by the record, by sufficient averment, that any certificates of election in the respective Hundreds and Election

Districts in Kent County as prescribed by law were ever legally made, signed, delivered or deposited by the inspectors and judges of the said Hundreds and Election Districts. It does, however, appear both by the petition and alternative writ of mandamus and the return thereto that votes were given in West Dover Hundred for every person voted for or named as voted for in said petition and alternative writ for the respective offices for which they were respectively candidates, and it also appears by the return that no certificates of election in said Hundred were ever made and signed by the inspector and judges of election in said Hundred. And in neither the petition nor the alternative writ is there any averment that such certificates of election for said West Dover Hundred were ever made or signed by the inspector and judges thereof. Alternative writ p. 7, Sec. 4 Par. 1-2; *id.* p. 9 Sec. 5; Return p. 5.

Another material omission is that there is no averment that the ballot box of any Hundred or Election District in Kent County containing the votes given at the election held Nov. 3, 1896, was delivered to the Sheriff as the presiding officer of the Board of Canvass. Alternative writ, p. 48, Sec. 11; Rev. Code (1893) 163, Sec. 25.

Mandamus is not a proper remedy when the end sought to be accomplished by it is to establish only a *prima facie* title to an office. *Sherbourne vs. Horn,* 45 Mich. 160; *Magee vs. Board of Supervisors,* 10 Cal. 376.

Finally, it is submitted that the inspectors who composed the Board of Canvass were *functi officio*. *Clark vs. Buchanan,* 2 Gilfillan, (Minn.) 298.

*James Pennewill, Beniah Watson, Frank H. Davis, Walter H. Hayes, Herbert H. Ward* and *Edward Ridgely,* for the defendants in error.

The assignments of error may be classified in groups so that the discussion of a few general principles of the law of mandamus will include all that is necessary to be said concerning them. This method is adopted in presenting the reasons for affirming the judg-

ment, rather than the examination of the errors assigned either in their numerical order or in detail.

While it is true, as a general rule, that the relief sought by a peremptory writ of mandamus will be withheld where it is impossible to perform the act to be commanded by the writ, yet when the difficulty has been caused by the respondents' own act, the Court will probably interfere, notwithstanding the alleged impossibility. High, Ext. Rem. § 14; *Queen vs. Birmingham & Gloucester R. R. Co.*, 2 Ad. & E. N. S. 47.

In this case, however, no impossibility of performance really exists.

The following facts appear by the record : (a) The plaintiffs in error were the duly constituted Board of Canvass for the County. (b) The Board did convene on the day and at the place required by law and were all present. (c) The certificates were produced before the Board, except that from West Dover Hundred. (d) The Board neglected or refused to open the ballot box for that Hundred and to obtain the certificates deposited therein, as was their duty. (e) The Sheriff, one of the respondents, has and will produce before the Board if re-convened the ballot boxes and certificates of election of all the voting districts of the County. (f) It is the duty of the plaintiffs in error to do what they ought to have done November 5th, A. D. 1896, and on re-convening they would have exactly the same powers. (g) Until it appears affirmatively to this Court that said plaintiffs in error, on November 5th, exercised all their powers, it cannot appear that it was impossible for them to perform their duties.

Under the constitution and laws of the State and the decisions of the Courts, the Court clearly had a right to grant the leave to amend exercised in this case.

The power of the Superior Court to grant amendments in this State is settled by abundant authority. Const. Del. Sec. 16; Rev. Code 849, ch. 112, Sec. 11. *State vs. Godwin*, 1 Harring. 216; *Hendrickson vs. Huey*, 2 *id.* 301; *Townsend vs. Townsend*, *id.* 277; *Whittaker vs. Parker*, *id.* 413; *McColley vs. Collins*, 5 *id.* 391;

*Vandegrift vs. Hollis,* 6 Houst. 90, 104 ; *Benjamin vs. Boyce,* 2 Harring. 316 ; *Cannon vs. Spicer,* 4 Houst. 100 ; *Collins vs. Townsend,* 2 Harring. 317, note a ; *Houston vs. Levy Court,* 5 Harring. 15.

Allowing amendments is entirely a matter of discretion and not reviewable. *Vandegrift vs. Hollis,* 6 Houst. 90, 104 ; *Thompson vs. Thompson, id.* 225, 230.

Upon the averments and admissions and the necessary intendments therefrom, no question can properly be raised as to the making and delivering of the certificates of election in question, certainly not by the plaintiffs in error who set up neglect of their duty and failure to examine the certificates presented, to see whether they were properly executed, or not. No denial of the averments in the petition, of the making and delivering of the certificates appears in either answer.

By the ninth assignment in error the plaintiffs in error contend that because the election officers in West Dover Hundred, one of whom is a plaintiff in error, neglected and refused to do their duty by making no certificate, it is impossible to ascertain the result in the County. It is also alleged that there is no averment of the making and signing of such certificate.

It is averred many times that no return for votes cast in West Dover Hundred was made to the Board, but also, in the same connection, that a proper return of the votes cast in that Hundred would have shown a plurality of ten or under for the petitioners, and this is nowhere denied, but it is admitted by six of said respondents and the Sheriff. From the record, as a whole, therefore, it appears that although no certificates of the votes cast in said West Dover Hundred were returned, yet that the result of the election was not thereby affected adversely to the petitioners, and that the presence of the certificate before the Board would not have changed the result.

The proposition is made with apparent seriousness that, if for any cause a certificate showing the vote at any precinct in a County is withheld, it is thereby made impossible for the Board of Can-

vass to ascertain the result of any election. That is to say, that without the fault of any voter or candidate, any two election officers in any district may nullify the election and prevent any candidate voted for from receiving the evidence of his election. A statement of such a proposition and its legal consequences seems to remove it from the region of controversy in any Court administering justice.

It is urged here as it was intimated below, that this particular difficulty could have been obviated by a writ of mandamus requiring the election officers for West Dover Hundred to perform their duty under the law. But at the time it appeared that the present writ was necessary it had become impossible for the election officers in West Dover Hundred to count the votes and certify the results, since it did not appear until after the assembling of the Board of Canvass and the delivery of the certificates and ballot boxes that the present writ would be necessary. It was then no longer in the power of the election officers to count and certify the votes.

An application for mandamus against them would therefore have been nugatory, unavailing and futile. *Lurtz vs. Hardcastle et al.,* 1 Marvel 450.

In this connection, however, it is averred that " the said Board of Canvass did not, in default of the certificate of election for West Dover Hundred, open the ballot box for said hundred, and take and use the certificate therein contained."

The absence or withholding from the Board of Canvass, for any cause whatsoever, of the certificate of the result of the vote in any precinct, will not excuse the non-performance of its duty to ascertain the result of the election upon the certificates presented to them, unless it appear that such certificates, if produced before the Board of Canvass, would alter the result obtained by them. This results necessarily from the purely ministerial character of the duties of the Board and from general considerations of private justice and public policy. Cooley, Const. Lim. (6th ed.) § 775, 782, 784; *Ex parte Heath,* 3 Hill 42; *Louisville & Nash-*

Del.]     McCoy *et al.* vs. STATE, *ex rel.*, ALLEE *et al.*     555·

Argument for Defendants.

*ville R. R. Co. vs. County Court et al.,* 1 Sneed 637 ; *Beardstown et al. vs. Virginia et al.,* 76 Ill. 34.

It is to be observed, generally, that the plaintiffs in error will· not be permitted to stultify themselves, and ask the Court to stultify itself, by setting up as a reason for not performing its duty when reconvened the impossibility of doing so, since it appears by their answer that they did undertake to ascertain the state of the election,· disregarding not only one certificate, but five others, and did certify and sign certificates embodying such pretended result.

The objection that the respondents were not duly and legally constituted inspectors cannot be considered seriously. It appears. by the record that this was a legal election ; that each of the respondents (with the exception of the Sheriff) exercised the duties of the office of inspector in his election district in Kent County, dealt with the public without objection, that the public were ignorant of the state of the law, that they had all the insignia of the office, and that there was an actual office. They are, therefore, precluded from making this objection (1) on ground of public policy, (2) because it does not lie in their mouth to set it up, and (3) it cannot be made collaterally. *State vs. Carroll,* 38 Conn. 449 ; *Buck vs. Eureka,* 109 Cal. 504 ; *Fowler vs. Bebee,* 9 Mass. 231 ; *Carleton vs. People,* 10 Mich. 251 ; *Smith vs. Lynch,* 29 Ohio St. 261 ;. *Yorty vs. Paine,* 62 Wis. 154 ; *Leach vs. People,* 122 Ill. 420.

It is true that the writ of mandamus only issues when there is no· other specific and adequate legal remedy. To oust the Court below therefore, of its jurisdiction and power to grant this writ it must appear that there is some other specific and adequate legal remedy.. We must, therefore, look first at the injury complained of, and next consider what specific and adequate legal remedy there is therefor.

The injury is, first, the refusal of the Board of Canvass to take into consideration, in ascertaining the result of the election, the votes of all the voting districts in Kent County, which were returned to the Board of Canvass, and, secondly, the failure and refusal of the Board of Canvass to issue a certificate of election to· the complainants, who, upon the canvass of all of said returns, have·

pluralities in their favor, and are on the face of the returns elected. The right of the complainants infringed on is to have the vote thus canvassed and certificates issued in accordance with such canvass. It follows that the only specific and adequate legal remedy is the performance, under legal compulsion if necessary, by the Board of Canvass, of their duties in this particular.

The ultimate title to the offices in question is not and cannot be litigated in this proceeding. It involves simply the right of these complainants to have the vote canvassed according to law, and certificates issued in accordance with such canvass. These certificates would not be final proof of title to the offices in question, but only *prima facie* evidence.

None of the provisions of Chapter 23 of the Revised Code of 1893, and the Chapters of the Statutes of the State therein set forth, provide any specific and adequate legal remedy in the premises. None of the provisions of that Chapter or these acts have any reference to the action of the Board of Canvass, or provide any appeal from any act of such Board, or any contest based upon the acts of said Board. The only method, therefore, of securing any remedy for the injury complained of is by the issuance of the writ of mandamus prayed for. *Strong's Case,* 20 Pick. 484 ; *People vs. Hillard,* 29 Ill. 421 ; *Bradfield vs. Wart,* 36 Iowa 295 ; *Rice vs. County Judge,* 7 Iowa 200 ; *Smith vs. Lawrence,* 49 N. W. Rep. 7 ; *Lewis vs. Co. Comr's,* 16 Kan. 102 ; *Atty. Gen'l vs. Iron County,* 64 Mich. 607 ; *Call vs. Canvassers,* 85 Mich. 367 ; *Roemer vs. Canvassers,* 90 Mich. 27.

Our own Courts, in the case of *Ferris vs. Knight, et al.,* 6 Houst. 146 ; *Knight and Kennedy vs. Ferris,* 6 Houst. 283 (on appeal) have recognized the propriety of this remedy in such cases.

The fact that a Canvassing Board has already declared the result, and issued a certificate of election to any person, is no adequate answer to a rule for a writ of mandamus, to canvass the returns properly, and to declare the proper result, when the returns have been improperly counted or improperly rejected. Merrill, Mandamus, § 182 ; *Ferris vs. Knight, et al.,* 6 Houst. 146 ; *Knight*

*& Kennedy vs. Ferris,* 6 Houst. 283 ; *Ellis vs. Bristol Co. Com'rs.,* 2 Gray 370 ; *People vs. Hilliard,* 29 Ill. 419 ; *Johnston vs. State,* 128 Ind. 17 ; *People vs. Rives,* 27 Ill. 242 ; *Smith vs. Lawrence,* 49 N. W. Rep. 7 ; *State vs. Howe,* 44 N. W. Rep. 874, 878 ; *Lewis vs. County Com'rs,* 16 Kan. 102 ; *State vs. Peacock,* 15 Neb. 442.

Though the Board of Canvassers have counted the votes, announced the result, and adjourned *sine die,* they may be compelled by a mandamus, to reassemble and count the votes, if it appear that upon the first canvass they failed to perform their duty under the law. Merrill, Mandamus §§ 185, 241 ; *Ferris vs. Knight,* 6 Houst. 146 ; *Knight & Kennedy vs. Ferris,* 6 Houst. 283 ; *Johnston vs. State,* 128 Ind. 17 ; *State vs. County Judge,* 7 Iowa 186 ; *People vs. Nordham,* 99 Ill. 553 ; *People vs. Schiellein et al.,* 95 N. Y. 134 ; *Atty. Gen'l vs. Canvassers of Iron Co.,* 64 Mich. 607 ; *State vs. Gibbs,* 13 Florida 55 ; *Simon vs. Durham,* 10 Oregon 52 ; *Smith vs. Lawrence,* 49 N. W. Rep. 7 ; *Lewis vs. Co. Com'rs,* 16 Kan. 102.

Under the statutes, the inspectors who served on the third of November, 1896, are still in office, and are in no sense *functi officio.* Sections 38, 41, 42, 43, 44 and 46 of Chapter 18 of the Revised Code, pages 172 and 173, show this, inasmuch as thereunder, in the case of a special election, the inspectors at the said last general election would be the inspectors for such special election.

In the improbable contingency that the general assignments of error considered, it may be proper to suggest these additional propositions and authorities.

The function of the Board of Canvass is ministerial. It can be (and was so done in New Castle County this year) by machines. The addition of the amount of votes in the several district certificates gives the aggregate amount of the votes given, and thereby ascertains the result of the election throughout the County.

*People vs. Van Slyck,* 4 Cowan 297 ; *People vs. Turnpike Co.,* 23 Wend. 222 ; *Ex parte Heath,* 3 Hill 42 ; *People vs. Fuller,* 29 Ill. 413 ; *State vs. County Judge,* 7 Ia. 186 ; *State vs. Bailey, id.* 390 ; *Bradfield vs. Wart,* 36 *id.* 391 ; *Lewis vs. Co. Com'r.,* 16

Kan. 102; *Brower vs. O'Brien*, 2 Ind. 432; Merrill, Mandamus §. 178; *Strong vs. Pickering*, 20 Pick. 484; *Luce vs. Mayhew*, 13 Gray 83; *Clark vs. Board of Examiners*, 126 Mass. 282; *Smith vs. Lawrence*, 49 N. W. Rep. 7; *State vs. Gibbs*, 13 Fla. 55; *Ferris vs. Knight*, 6 Houst. 170; *Knight et al. vs. Ferris*, 6 Houst. 328.

After the state of the election shall have been ascertained by calculating the votes as aforesaid, the Board makes and signs certain certificates as provided in Sections 29, 30 and 31, Rev. Code. (1893) 169, 170; this too is a ministerial duty. Cases *supra*.

These duties imposed on the Board of Canvass being of a public character, a formal demand or refusal is unnecessary. The public duty makes the demand, and the omission to perform is the refusal. *State vs. County Judge*, 7 Iowa 203; *State vs. Bailey*, *id*. 395; *Lewis vs. Co. Com'rs*, 16 Kan. 102.

The Canvassing Board cannot reject returns, or refuse to sign a certificate of election, because illegal votes were received, or other frauds or irregularities were practiced at the election. Merrill, Mandamus, § 179; *Parker vs. Emminger*, 74 Pa. 479; *Smith vs. Lawrence*, 49 N. W. Rep. 7; *Rice vs. County Judge*, 7 Ia. 202; *Hadmore et al. vs. Slaughter*, 70 Ala. 546; *Kisler vs. Cameron et al.*, 39 Ind. 489; *Willeford et al. vs. State*, 43 Ark. 62; *Lewis vs. Co. Com'rs*, 16 Kan. 102.

Grubb, J., delivered the opinion of the Court.

Recognizing the urgent public reasons for a speedy decision of the important questions essential to the final determination of this case, we have called a special term, for the first time in its history probably, of this Court of last resort in this State. To this end we have also extended every possible indulgence to the parties and counsel and allowed none to ourselves in the laborious and exhausting effort to discharge our grave and responsible duties within the very limited time at our disposal.

This case is brought here on a writ of error to the Superior Court to review its judgment and proceedings in awarding a peremptory mandamus upon the petition of the defendants in error,

Del.]     McCoy *et al.* vs. State, *ex rel.*, Allee *et al.*     559

Opinion.

relators below, against the members of the Board of Canvass of Kent County in this State the defendants below, now plaintiffs in error.

The minority of said Board having severed because they refused to unite with a majority thereof in alleging grounds of error, the said majority have assigned numerous causes of error to the judgment and proceedings in the Court below.

The relators in this proceeding, in their petition for the mandamus prayed for, claimed to have been elected to certain offices at the general election in said County held on Tuesday, November 3, 1896. In their prayer they asked for the mandate of the Court below to the Sheriff and others whom they allege to be the Board of Canvass of said County, to compel them, as said Board of Canvass, to reconvene and ascertain the state of the said election throughout said County, and to make and deliver certificates thereof, as required by law.

During the course of this particular proceeding much has been stated, as appears by the record, about the alleged bribery, violence and lawlessness attending said election, and which it is contended by the respondents invalidated the alleged election of the relators, and debars them from any legal title to the offices they now claim.

But it is now well settled, as was correctly and unanimously declared by the Court below, that in mandamus proceedings the title to an office cannot be inquired into and determined and that, therefore, in the pending proceeding, said Court could neither determine the validity of the title to any of the offices therein claimed, nor the legality of the election wherefrom alone such title can be derived. It could simply decide whether or not said Board of Canvass possessed the power and had duly discharged its statutory duty to determine who was entitled to have, not the actual title, but merely the *prima facie* evidence, which the certificate is, of the title to each office in question.

As the Court below could not determine the validity of their title, and to that end inquire into the legality of their alleged election, therefore it could not investigate and pass upon the real merits

which lie back of their present claim to a certificate merely; for that can be reached only by a contest of their actual title, through some other procedure and before the appropriate tribunal.    Its inquiry within the scope of the pending procedure was limited.    It was solely to discover whether or not the Board of Canvass had duly ascertained the state of the election held throughout this County on November 3d, 1896, by calculating the aggregate amount of all the votes for each office which shall have been then given in all of the Hundreds of the County for every person voted for for such offices, and, after the state of the election shall have been ascertained by calculating the votes as aforesaid, had made and delivered the prescribed certificates thereof in form and manner as required by law, and to determine, if said Board had not so done, whether or not the peremptory writ should be awarded as prayed for by the relators.

The Board of Canvass in each county of this State has been constituted and empowered by statute as a suitable instrumentality for this convenient purpose.    It is composed of the Sheriff as presiding officer and the inspectors of election in each hundred.    If the Sheriff be absent, the Coroner or other person is designated to act as presiding officer in his stead pursuant to statutory provisions.

It is the duty of the inspectors and judges of every hundred and election district in the county to make and sign certificates of election in their respective hundreds and districts, according to the form in said statute provided, stating every office for persons to fill which votes had been given at said election, and the name of every person to whom any vote had been given for such office, and the number in words at length of the votes given to each person for said office.

Provision is further made for the delivering of such certificates for the use of the Board of Canvass when engaged in the discharge of its duty to ascertain the state of the election throughout the county as aforesaid.    Such certificates, as was properly held by the Court below, are the sole and exclusive evidence from which it, the said

Del.]   McCoy *et al.* vs. State, *ex rel.*, Allee *et al.*   561

Opinion.

Board, can ascertain the state of the election throughout the county. In discharging said duty the powers of said Board are, in general, ministerial, and not discretionary or judicial in their character. Whilst said Board of Canvass must necessarily determine that such certificates are genuine and not fabricated, and are made and signed in the form and manner prescribed by law, yet said Boards of Canvass in this State are not empowered and have no lawful authority to inquire into the validity of any election in any hundred or election district, nor into the irregularity or misconduct attending any election therein, nor to throw out, nor to refuse or fail to count every vote or votes appearing to have been given therein upon the face of the said certificates of election duly made and delivered and produced before said Boards in the form and manner prescribed by law.

On the contrary, it is their plain and imperative duty to promptly discharge said task of ascertaining the state of the election throughout the county as aforesaid, and from the evidence furnished exclusively by said certificates. And it is the further duty of every such Board, when it comes to their knowledge that the inspectors and judges of any Hundred or Election District have refused or failed to make and sign the certificates of the votes actually given therein at any election, to take such proceedings, without undue delay, as shall be appropriate for procuring such certificates, and thus enabling such Board to complete their task of ascertaining the state of the election throughout the County as aforesaid.

For until said Board " has calculated the aggregate amount of *all* the votes for each office which shall have been given in *all* the Hundreds and Election Districts of the County for every person voted for for such office."—to quote the statutory language—and signed and delivered the prescribed certificates, it cannot be deemed in legal contemplation to have fulfilled the purpose of its creation, exhausted its powers and become *functus officio.*

Having described the nature and the purpose of the Boards of Canvass and defined their powers and duties as they are constituted in this State, we will now refer as briefly as possible to the recog-

nized principles and established rules which govern Courts in the granting of relief by mandamus, and in the course of the pleadings and practice in that particular procedure.

Mandamus, according to the uniform current of our well-considered adjudications is, in this State, a prerogative writ in the supervisory sense, issuable exclusively by our Superior Court, not of course, but only in the exercise of a sound judicial discretion. It is a remedial writ, the appropriate functions of which are the enforcement of the performance of duties imposed by law, by officers and others who neglect or refuse to perform their duty. The remedy is extraordinary, and if the right is doubtful, or the duty discretionary, or the power to perform the duty wanting, or inadequate, or if there be any other specific and adequate legal remedy, this writ will not in general be allowed. The right which it is sought to protect must be clearly established and the writ is not granted in doubtful cases. When substantial doubt exists as to the duty whose performance it is sought to coerce, or as to the right or power of the officer to perform the duty, the relief will be withheld, since the granting of the writ in such cases would render the process of the Court nugatory and fruitless.

" It is said to be discretionary in the Court to grant or refuse a mandamus ; but a discretion, regulated by the rules and principles of law, must be understood, and not an arbitrary and capricious discretion." *State vs. Bruce*, 3 Brev. 264, 270.

The general principles and rules of pleading and practice prevail in cases of mandamus, so far as applicable to the subject matter, and, in the absence of statutory regulations to the contrary, the practitioner must still resort to and be governed by the rules established at common law. High, Ext. Rem., §§ 448, 498.

The common law principles and rules of pleading and practice governing mandamus proceedings prevail in Delaware, as is shown by the uniform authority of the reported cases adjudicated in this State. *State vs. Wilm. Bridge Co.*, 3 Harring. 315, 341 ; *Houston vs. Levy Court*, 5 *id.* 15, 16, 108 ; *Union Church vs. Saunders*, 1

Del.]     McCoy *et al.* vs. State, *ex rel.*, Allee *et al.*     563

Opinion.

Houst. 100, 103, 134; *Cannon et al. vs. Janvier et al.,* 3 *id.* 27 ; *Knight et al. vs. Ferris,* 6 *id.* 283.

The alternative writ of mandamus is usually regarded as standing in the place of the declaration in an ordinary action at common law.    Its first requisite is that it should make out a *prima facie* case entitling the party aggrieved to the extraordinary aid of the Court.    Great strictness is required in the form and contents of the alternative writ.    High, Ext. Rem. § 538.

The gravemen of the complaint as stated in the inducement of the writ must be distinctly charged since the Court will infer no fault or dereliction on the part of the respondents for the purpose of sustaining the writ.    It must show upon its face a clear right to the relief demanded, and the material facts on which the relator relies must be distinctly set forth so that they may be admitted or traversed by the return.

In this State, the common law rule prevails that the return to the alternative writ is conclusive and to be taken as true for the purposes of the case, until proven false in an action for false return. *State vs. Wilm. Bridge Co.,* 3 Harring. 540.

It is generally competent for the respondent to set forth in his return several distinct and separate defences, at his option, and if he prevails in either of them, the peremptory writ will be refused. But if they be inconsistent or repugnant, the Court may quash the entire return ; yet it is within the discretion of the Court to quash such portion of the return as it may deem insufficient, and to allow the rest to remain.    High, Ext. Rem. § 462.

The return to the alternative writ must set forth either a positive denial of the truth of the allegation therein contained, or state other facts sufficient in law to defeat the relator's right.    And in general the return should contain positive allegations of facts, and not state mere inferences from facts.    An argumentative return, like any other argumentative pleading, is bad.    And a return, as well as the alternative writ, is faulty which states mere conclusions of law, without stating the facts so that the Court may judge of their sufficiency.

With this presentation of the law governing the Courts in the allowance of mandamus and regulating the procedure therein, we now proceed to apply it to the determination of the case now before this Court.

Here two general inquiries are to be considered :

1. Have the relators clearly shown that they were plainly entitled when the peremptory writ was awarded to have the specific things done—that is, the canvassing of all the votes actually given in all the Hundreds and the making and delivering of the certificates of the result of the election throughout the county—in aid of which they prayed for said mandamus ?

2. Have they also shown that the alleged Board of Canvass to whom the peremptory writ is directed, had then the power to do those specific things ?

The majority of the respondents below, by their return show-ing cause against the mandamus, contend that neither of these es-sential prerequisites to the awarding of the peremptory writ has been sufficiently shown or established. The theory upon which said respondents have based said return is :

1. That the alleged inspectors composing said alleged Board of Canvass, excepting only one, have never been elected or appointed under any statute of this State and that therefore said alleged Board is not and has never been, legally constituted, or lawfully entitled, empowered or required to perform the specific acts com-manded to be done by this particular mandamus.

2. That if, however, they are, and have been, in legal contem-plation, duly and legally constituted, and lawfully authorized and required to do said acts, yet that they, nevertheless, have always been and were when the peremptory writ was awarded unable, for the several causes they have specified in said return, to ascertain the state of the election throughout the County by calculating the ag-gregate amount of all the votes for such office which have been actually given in all the Hundreds and Election Districts of the county for every person voted for for such office, and to make the prescribed certificates thereof as required by law, and therefore

were unable to obey the peremptory writ as prayed for and as awarded by the Court below.

Of the said several causes of said inability specified in the said respondents' return, and assigned as error, we shall now consider but one only, as its determination will, in our judgment, be sufficient to adversely dispose of the case before us.

This particular cause of inability and want of power in said Board which is urged in their return by the majority of the respondents below as a ground for refusing the peremptory writ, is as follows:

Said respondents have specifically and clearly alleged in their return that under the plain and mandatory provisions of the statute in that behalf, it was the imperative duty of said Board of Canvass, if it must be viewed in law and fact to be a duly constituted Board of Canvass, to canvass, as required by law, *all* the votes for each office which have been given in all the Hundreds of the County for every person voted for for such office at the general election on Tuesday, November 3d, 1896, and to make the prescribed certificates of the result thereof as required by law; that votes had been given in West Dover Hundred at said election, but that the inspector and judges of said Hundred did not then and have not hitherto made or signed and delivered the certificates of election in said Hundred as required by law, and that by reason thereof, the said Board was at the time of awarding the said mandamus and always theretofore unable to canvass said votes and so, to this extent, to perform their duty of ascertaining the state of said election throughout the County as required by law and commanded by the alternative writ to do; and that therefore the peremptory writ should not be awarded.

After a careful examination of said respondents' return, we are unable to conclude that this ground and portion of said return should not stand as a sufficient return by said respondents, plaintiffs in error, to the alternative writ appearing of record here. If this much of said return should so stand, then it was fatal to the application of the relators. For as the return, under the established

practice in this State, is taken to be conclusive of the facts therein stated, it proves beyond question that said Board had not, at the time said peremptory writ was awarded nor theretofore, the power to perform the alleged duty and do the specific things commanded by the said writ.

But even if the entire return were insufficient, yet if this ground of objection, viz., the want of power to do the required acts, is *plainly disclosed* by the *relators' petition* and *alternative writ,* then said Court would not have been warranted in awarding the peremptory writ, and therefore should not have done so, because in that event its decision would be liable to review and reversal for error manifest of record.

In our judgment, said ground of objection, arising from the absolute failure of the inspector and judges of West Dover Hundred to make, sign and deliver said prescribed certificates as required by law, is plainly disclosed upon the face of the petition of the relators and of the alternative writ drawn in conformity therewith.

Indeed, so far as the *petition* and *writ* are concerned, it does not sufficiently appear that the prescribed certificates of the election in the respective Hundreds and Election Districts of the County were ever made, signed or delivered in the form and manner required by law, by any of the respective inspectors and judges of any of the said Hundreds or Election Districts.

As already shown, the burden is on the relators not only to aver and show that they are entitled to have the specific things done in aid of which they seek the mandamus, but also to aver and show that those to whom the writ is directed have the power to do it.

In the pending case then the relators must distinctly and particularly set forth *inter alia* in their petition and alternative writ, every such fact—and not mere conclusions—as will apprise the respondents of what facts they are to admit or deny, and, further, enable the Court to judge whether such facts warrant the inference sought to be drawn from them.

Now, have the petitioners set forth such facts as, under the rules of pleading applicable to this proceeding, will warrant the inference that the required certificates of the election in any of the several Hundreds, and especially in West Dover Hundred, were ever made, signed and delivered as prescribed by law ? Plainly not. In Section 6 of their petition and writ they allege it to be the duty of the inspector and judges to make, sign and deliver the prescribed certificates, but they nowhere aver that said officers in West Dover Hundred, or any of said Hundreds, have ever performed this duty in respect to said election. And this cannot be inferred or presumed by the Court to have been done in the case before us. High, Ext. Rem., § 536.

It is true that they allege in Paragraph 10 of Section 6 of their petition and writ that the " certificate of election " of each Hundred where elections were held, was delivered to the Sheriff, but they do not aver that it was the certificate made and signed in form and manner as prescribed by law; nor do they aver that the ballot box of any Hundred containing the duplicate certificate and duly secured as prescribed by law was duly delivered to the Sheriff for the use of the Board as required by statute.

Now, it is not sufficient to say that because it was the duty, as they aver, of the inspectors and judges to make, sign and deliver the prescribed certificates, and because " the certificates of election " simply—and not the certificates of election made and signed and delivered in form and manner as prescribed by law—are alleged to have been delivered to the Sheriff, therefore the duty was performed, and that such prescribed certificates were actually made, signed and delivered as required by law. Such pleading is argumentative and in this, as well as in other respects, is faulty and is also insufficient in law.

This fatal insufficiency of the relators' allegations is still more clearly established by their several admissions in their petition and writ that no return of the votes cast in West Dover Hundred was ever made to the Board of Canvass.

They do impliedly—but not directly—and therefore argu-

mentatively, and contrary to the rules of pleading, aver in paragraph 11, section 6, of their petition and writ, that the Board should have opened the ballot box of said hundred, and used " the certificate therein contained," as they allege.  But they do not anywhere aver that such West Dover Hundred box, or any box for any hundred for said election, was ever either in existence or delivered to the Sheriff or Board ; nor do they anywhere aver, as already stated, that the West Dover Hundred certificate, or any other certificate or certificates of the election therein, or in any of the hundreds of the county, was or were as prescribed by law, ever made and signed by the inspector and judges and delivered to the Sheriff, or placed in the ballot box of said West Dover Hundred or of any of said respective hundreds, as expressly required by statute.

For the foregoing reasons, therefore, the insufficient averments of these essential and indispensable facts are inadequate to maintain the relators' case as presented in the said petition and writ, and consequently present a sufficient ground for the reversal of the judgment below.  Without the requisite certificates of West Dover Hundred, as well as of every other hundred in the county in which votes were actually given, the Board could not have the power necessary to the complete discharge of the duty commanded by said writ.  Since the relators have failed to aver, and the said respondents have, in their return, denied that said certificates were ever made, signed and delivered as required by law, it is not shown to this Court that said Board had the power necessary for the performance of the duty imposed on it by law and sought to be enforced by said writ.  Therefore, it should have been refused, because if granted it would prove nugatory and unavailing.

That the plain, broad and mandatory language of the statute, without exception, proviso or reservation as it stands, imperatively requires the Board to canvass *all* the votes actually *given* in any Hundred, exclusively upon the evidence of the certificates thereof, notwithstanding that it has not expressly provided any specific means for compelling the making and delivering of such certificates when none have been made and signed, is unquestionable.

Under these circumstances the Legislature has imposed a duty which it has not specifically given the power to perform. It has expressly provided for obtaining the certificate where it really exists, but not for compelling the making of one where votes have actually been "given" but not certified, as in the West Dover Hundred case. But the duty having been expressly imposed, yet, notwithstanding such Legislative silence, it may be enforced by mandamus at the instance of the Board, or a candidate in the election or any other proper relators, against the delinquent inspector or judges of West Dover Hundred, who should have made the prescribed and necessary certificates for that Hundred.

That a mandamus is allowable for such a purpose, was held in *State, ex rel. Ferris vs. Knight et al.,* 6 Houst. 146, and was afterwards recognized in the same case, on error, in this Court, 6 Houst. 321. Moreover under our recent law for the calling of Courts in special session this is now more feasible than formerly.

Hence the relators in this cause, if the Board failed to do so, should have first applied to the Court below for such preliminary mandamus before resorting to it for the present mandamus, in order to clothe the Board with the power indispensably necessary to enable it to discharge the duty specified and commanded by the latter. It is no sufficient objection to say that there would not be time for both proceedings. For this would be equally applicable to the present or any mandamus proceeding, which may, and often does for that reason, actually prove nugatory and fruitless, although such result, when such mandamus was granted, could not be certainly anticipated.

Nor can it be objected that the Board cannot take notice that there were votes given and an election held in West Dover Hundred in the absence of any official certificate before them, on the ground that the only evidence upon which it can act must be that of the prescribed certificate. In this State the Board of Canvass is composed—in addition to the Sheriff—of all the election inspectors of the County. The West Dover inspector being one of them, therefore as a member of the Board, he actually knew that

votes had been really given in his Hundred and, further, whether, or not, the prescribed certificates also had been made by him and the two judges of the Election District whose duty it is by law to make them.

Moreover, it is manifest by Section 27, Chap. 18, of the Revised Code, page 168, that the Board is not confined to the evidence of the certificates in determining the mere fact that the votes have actually been given in a particular district or hundred which have not been duly certified by its election officers. For the provision of said section that the Sheriff or other presiding officer of the Board shall issue his warrant to obtain the certificate and the box containing its duplicate when they are already in existence but have not been delivered to him for the use of the Board, clearly imports that the Board may ascertain in the absence of the official certificate, that votes have been given and an election held in any particular district; and therefore take the needful steps to secure such certificate. Because the Legislature has not expressly given power to procure the making, signing and delivering thereof by mandamus against the proper inspector and judges, it does not follow that mandamus should not be invoked for this purpose, as a necessary precedent auxiliary to a mandamus to compel the Board in its turn to count such certificates in ascertaining the whole vote given in the county. It is more reasonable to infer that the Legislature did not specifically give such power because, as must be presumed, it was aware that mandamus was already an existing remedy for such purpose.

The people have a right, as has the individual candidate, to have their will, as really expressed at each and every poll, truly recorded, and their choice regarded. Unless the defaulting inspector and judges in any Election District are compelled to furnish the prescribed and indispensable certificates to the Board, the latter cannot perform its duty, and thus the choice of the people as expressed at the polls will be disregarded and may, possibly, be defeated.

Consequently, mandamus as a precedent auxiliary to the action of the Board should first be properly applied for by it, or by a

candidate voted for, or by some other proper relator, to enable the Board to discharge its duties.

If this would compel the Board to adjourn until some other day than that of its first meeting, there is nothing in the law to prevent or forbid it. Section 29, Chapter 18, Revised Code, forbids the Board to adjourn or separate after it has calculated the aggregate amount of all the votes given in all the Hundreds of the county, without first making the prescribed certificates of the result thereof, but it does not forbid the doing so before it has completed said computation. If the Sheriff fails to find the absent certificate and ballot box containing its duplicate, which it is his duty to procure under Section 27 of Chapter 18, during the first day of the Board's sitting, can it be held that in case of such default, the Board must complete the count in the absence of such certificate? How can this be when the statute commands that it shall count *all* the votes given in *all* the Hundreds, etc., and actually makes provision for procuring an absent certificate as needful to afford a complete ascertainment of the people's expressed will at all the polls where an election has actually been held. Then why may not a mandamus be invoked to aid the Board to perform its duty, when it cannot do so unless some remedy is available for that purpose?

The statute commands that all the votes actually given in all of the hundreds shall be counted, but does not limit the time within which the duty shall be performed. The law itself, therefore, interposes no obstacle to the preliminary mandamus against the delinquent poll officials to compel the production of the certificates indispensably necessary to enable the Board to discharge its duty, and thus record the will of the people as really expressed in each and all of the hundreds throughout the county. Any other construction would defeat the plain purpose of the statute. If it be urged that the possible delay thus occasioned may prove both impracticable and detrimental to the public interest, the reply must be that the remedy is to be sought in a repeal or alteration of the law, which is a matter of legislative and not judicial discretion and power.

The adjudicated cases cited by the defendants in error against the foregoing conclusions respecting the duty of the Board to secure the West Dover Hundred certificate and include the votes as therein set forth in its ascertainment of the state of the election throughout the county, are inapplicable to the present case in view of its particular facts and of the special provisions of our statutes already referred to.

Their contention that the Board, in discharging the duty commanded by the peremptory writ awarded in this case, may exclude from its computation the votes actually given in the said West Dover Hundred, when the prescribed certificates thereof have not been signed and delivered for its use, and when the result of the election would not be thereby changed, is altogether untenable.

Mandamus is employed only to compel the performance of an act in accordance with and not contrary to the law. It can neither diminish nor increase the duty as fully prescribed by law. Its function is not to create a duty, but to coerce the performance of a pre-existing duty. In the present instance it has been invoked to enforce the performance of the duty imposed by the statute upon the said Board of Canvass. That duty is to compute exclusively from the prescribed certificates of the election all the votes actually given in all the hundreds of this county, including those shown and admitted by both the relators and respondents to have been actually cast in said West Dover Hundred.

Hence the Court, in awarding the writ, when allowable, must necessarily order this, and the Board must do this, no matter whether the actual votes given were or not contrary to the showing of the certificates, or whether the unexecuted or missing certificates would or not alter the result. For so the statute expressly commands. Hence, in granting and obeying the mandamus, it is immaterial whether or not the mere withholding of the certificates would alter the result.

Especially is this true where, in a case like the present, it does not appear by the record or otherwise, that in the West Dover Hundred election the ballots have been lost or destroyed, or that

the result was not ascertained at the close of the polls, or that the inspector of said Hundred or any of said plaintiffs in error has or have in any way prevented the due making, signing and delivery of the certificates of said election, or that, if a preliminary mandamus had been applied for and obtained by the relators below, it would have certainly proved nugatory and fruitless for the purpose of procuring the unexecuted certificates of the election in said Hundred. Moreover the relators in their petition below expressly and explicitly prayed for a mandamus commanding the Board to compute—"All the votes given in all the Hundreds" at said election, thus manifestly including those given in West Dover Hundred, and the peremptory writ as awarded is in conformity with the prayer although the petitioners, as appears by their petition and the respondents' return, were informed before said writ was awarded that no certificate of the West Dover Hundred election had then been made, signed, or delivered as prescribed by law.

It should therefore have been apparent to both the Court below and the relators that the Board had not then the power to perform the duty commanded by said writ and required by the statute, and that the power to obey both the writ and the law depended upon two contingencies, viz : either the willingness of the three Dover hundred election officers to do what the respondents' return shows a majority of them had refused, and thereunto omitted to do, or the uncertain success of a preliminary mandamus to compel said officers to make, sign and deliver the requisite certificates. A peremptory mandamus is an absolute command to perform the particular act which it seeks to coerce, and only a return of obedience to the writ and of what has been done in its execution will be allowed; and therefore this writ will not be granted unless the act or duty whose enforcement is sought is legally possible at the time.

The present writ was awarded Dec. 3d, 1896, and made returnable on the 12th—but nine days afterward—and thereupon the court adjourned to the latter day. There was no prayer by the relators or any other person, for a preliminary mandamus against the West Dover Hundred election officers to furnish said Board with

the certificates from said hundred, and hence no such mandamus was awarded before the pending writ was granted. Under these circumstances it was manifestly improbable that the Board could procure the said certificate by means of preliminary mandamus proceedings, and discharge the duties directed by the pending writ and make its return of obedience thereto on the said 12th day of December. Consequently said Board, to do so, must have depended upon the voluntary making, signing and delivering of the requisite certificates by the delinquent election officers of West Dover Hundred. But it is shown by the respondents' return that a majority of them had refused to do this and it does not appear that prior to the granting of said writ they had ever consented or shown any disposition to do so; nor does it appear by the record before us that they had expressly declared their readiness to do so, and submitted themselves to the jurisdiction of the Court below in such manner that its commands in that behalf could be compulsorily enforced. Otherwise even their consent—which has not yet been shown—to furnish said certificates, would not have warranted the presumption that they, although public officers, would perform such duties; and consequently would not have warranted the granting of the peremptory writ by the said Court.

This view was plainly expressed by Chancellor Saulsbury in this court, in *Knight and Kennedy vs. Ferris*, 6 Houston 324. That case was a proceeding by mandamus against the inspector and two judges of an Election District, to compel them to make, sign and deliver to the relator therein the certificate of his election.

Chancellor Saulsbury said : " It won't do to say that the petitioner states in his petition that Pierce is willing to do his duty.

The Court cannot assume without his express admission of record that he would so act, and upon such assumption award the peremptory writ against the other two judges. Courts do not, and should not, so act. Their commands should be such that obedience to them can be enforced and not be dependent upon the voluntary action of any one."

Finally it should be remembered that the decision of the Board of Canvass does not give or defeat the actual title to the office. Its certificate of the result of the whole election merely furnishes *prima facie* evidence of the candidate's election. If he fails to obtain this owing to the failure of mandamus, or other proceeding, he yet has resort to the Court or appropriate tribunal which finally determines not merely *prima facie* but conclusively his actual *de jure* title, where the legality and validity of the election and the real merits of the case can alone be investigated and decided. So that a temporary detriment only and not an irremediable one, is really done him.

For the reasons stated, this Court considers that the judgment of the Court below, awarding the peremptory writ, should be reversed.

The decree entered was as follows:

And now, to wit, this fourth day of January, A. D., 1897, it is ordered, adjudged and decreed by the Court here, that the judgment in this cause in the court below be and the same is hereby reversed, and that the petitioners below pay the costs in three months, or attachment, and that this judgment be certified to the Court below.